UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANNIE PARSONS, successor Personal
Representative of Estate of Randy
Parsons, deceased,

Case No. 07-cv-13335

      Plaintiff,

HONORABLE STEPHEN J. MURPHY, III

v.

PATRICIA CARUSO, et al.,

      Defendants.

                              /

**ORDER ADOPTING REPORT AND RECOMMENDATION,
GRANTING DEFENDANTS' THREE MOTIONS FOR
SUMMARY JUDGMENT** (docket nos. 102, 113, & 120)

Before the Court is the Report and Recommendation ("R & R") of Magistrate Judge

Virginia M. Morgan with respect to three motions for summary judgment. Judge Morgan

served the R & R on the parties, and notified them that any objections must be filed within

fourteen days of being served with the R & R. Plaintiff filed timely objections. Defendants

filed no response to the objections. For the reasons stated below, the Court overrules

Plaintiff's objections and adopts the magistrate judge's R & R, as supplemented herein, as

the opinion of the Court.

**STANDARD OF REVIEW**

A District Court's standard of review for a magistrate judge's R & R depends upon

whether a party files objections. With respect to portions of an R & R that no party objects

to, the Court need not undertake any review at all. *Thomas v. Arn*, 474 U.S. 140, 150

(1985). On the other hand, the Federal Rules of Civil Procedure provides that a district

court "must determine de novo any part of the magistrate judge's disposition that has been

properly objected to. The district judge may accept, reject, or modify the recommended

disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a magistrate judge's Report and Recommendation. *See* 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3070.2 (1997); *see also Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). Thus, because Plaintiff has made objections, the Court must conduct a de novo review of the portions of the R & R to which Plaintiff specifically objects.

## DISCUSSION

The Court will briefly describe the background for the lawsuit here, but incorporates by reference the section of undisputed facts contained in Judge Morgan's R & R.

This lawsuit is brought by the representative of the deceased Randy Parsons. Parsons was incarcerated and held in the custody of the Michigan Department of Corrections ("MDOC") after having been convicted of a crime. He suffered from mental illness as well as a seizure disorder. Parsons was transferred to the Standish Maximum Correctional Facility ("Standish") on August 25, 2004. The day following his arrival he was examined by a physician's assistant and later by a psychiatrist, and was prescribed various medications by both. Three days later he died in his jail cell.

Two autopsies were performed. The one performed by the Arenac County Medical Examiner concluded that Parsons died of a "seizures disorder." The second one, preformed at the request of Parsons's family, concluded that the cause and manner of

2

death was "undetermined." This report was later supplemented by the examiner to state that Parsons died of a fatal seizure.

Plaintiff subsequently brought this lawsuit against various individuals alleged to be responsible for Parsons's death by failing to prevent the seizure. Plaintiff alleges Defendants violated Parsons's Eighth and Fourteenth Amendment rights by exhibiting deliberate indifference to his serious medical condition.

The majority of the defendants in the case have been dismissed, either voluntarily or involuntarily, and six defendants remain. Through the three instant motions, the remaining defendants have moved for summary judgment on the claims against them. Magistrate Judge Morgan recommends in her Report that the Court grant all three motions. Plaintiff has filed timely objections to the Report. The Court has conducted a *de novo* review of those portions of the R & R to which Plaintiff objects and agrees with the analysis set forth therein recommending the Court grant the three motions. Rather than restate that analysis here, the Court will respond to the objections made by Plaintiff. The Court will at times supplement the analysis in the R & R.

I.  Objections to Statement of Facts in R & R

Plaintiff has filed five objections to various statements in the R & R that relate to the undisputed facts set forth in the R & R. *See* Objs. *a-e.* The Court overrules these objections. The statements in the R & R forming the basis for Plaintiff's objections *a* through *c* are undisputably true, and Plaintiff's attempts to argue otherwise are unavailing. In Objection *d,* Plaintiff objects to Judge Morgan's statement that the parties did not provide evidence that Parsons received his psychotropic medications ordered locally by McCarthy. In support, Plaintiff provides the local pharmacy's records and MDOC health records for Parsons, which both demonstrate that psychotropic medications from the local pharmacy

were in fact administered to Parsons.  This fact, however, relates only to the alternative ground in the R & R supporting McCarthy's summary judgment, which even if incorrect is not sufficient to warrant denial of summary judgment since the primary ground is correct as discussed below.

In Objection *e*, Plaintiff objects to Judge Morgan's statement that the autopsy performed at the request of the Parsons family concluded that Parsons's cause and manner of death were undetermined.  Plaintiff cites the affidavit of the forensic pathologist, which modifies the earlier findings in the autopsy report and confirms the cause of death to be seizures.  As Judge Morgan properly recognized, however, there were *two* autopsies performed.  The first was by the Arenac County Medical Examiner, who concluded that Parsons died of seizures disorder.  Judge Morgan assumed in her analysis that a jury could find Parsons died of a seizure based on this report.  Assuming a jury could find Parsons died of a seizure, this fact is not material to any of the constitutional claims made against any defendant.  That is, it does not demonstrate that any defendant subjectively perceived facts from which to infer a substantial risk to Parsons, that any defendant drew the inference, which it then disregarded.

For the above reasons, therefore, Plaintiff's Objections *a* through *e* are overruled. The Court adopts the statement of facts contained in the R & R.

II.    Defendant McCarthy's Motion for Summary Judgment

Plaintiff claims Defendant McCarthy knew of Parsons's seizure disorder, understood that without Dilantin (an anticonvulsant) Parson risked suffering a seizure, and then disregarded that risk by failing to prescribe Dilantin from the local pharmacy.  Judge Morgan recommends the Court grant Defendant McCarthy's motion for summary judgment on this claim for failure to demonstrate a constitutional violation.  She concludes that

4

Plaintiff cannot establish an Eighth Amendment violation because Parsons did, in fact, receive medical treatment for his seizure disorder from a physician's assistant who prescribed him Dilantin, and McCarthy was aware of this medical assessment.

Plaintiff objects to this conclusion, arguing there is no evidence a physician's assistant *actually ordered* Dilantin from the local pharmacy to ensure Parson's would received it the same day. Obj. *f.* Whether the physician's assistant actually ordered Dilantin locally, or at all, however, is not relevant to the issue here, which is whether McCarthy disregarded the risk to Parsons of not being given his seizure medication. The fact that McCarthy chose not to duplicate the prescription does not indicate he *disregarded* a known medical risk. McCarthy believed any potential risk was averted by the Dilantin prescription already provided by the physician's assistant. On these undisputed facts and the undisputed testimony of McCarthy, no jury could find McCarthy disregarded a known and substantial health risk.

Moreover, McCarthy testified in deposition that he was hired to treat mental health issues, that Dilantin in not used at all in mental health, and that Dilantin has no use at all in Psychiatry. Also, within the program in which he was working, McCarthy was prohibited from treating medical problems, of which a seizures disorder is one. McCarthy dep. at 17-19. Accordingly, McCarthy could not have disregarded the risk of a potential seizure by failing to prescribe Dilantin when he never had the authority to prescribe it in the first place.

Plaintiff also objects to Judge Morgan's conclusion that Parsons's medical need was met when the physician's assistant prescribed Dilantin, relieving McCarthy of his duty to arrange to get Dilantin from the local pharmacy. Obj. *g.* Plaintiff argues that Judge Morgan's reliance on *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) for the proposition that courts will not second guess medical judgments and constitutionalize

5

claims sounding in tort, is misplaced here because Parsons received *no* medical care for his seizure disorder. Plaintiff's objection is belied by the record, however, as the physician's assistant did in fact treat Parsons's disorder by prescribing him Dilantin.

Plaintiff also objects to Judge Morgan's citation of *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999) for the proposition that deliberate indifference does not include negligence in diagnosing a medical condition. Obj. *h.* Plaintiff claims this is not a case in which McCarthy *misdiagnosed* Parsons, but was a situation where McCarthy decided to risk a seizure by failing to administer needed doses of anti-seizure medication. Plaintiff fails to recognize, however, that the principal basis for Judge Morgan's conclusion that McCarthy should be granted summary judgment was that Parsons received medical care from the physician's assistant, which McCarthy knew, and that the Court should not second guess McCarthy's medical decision not to duplicate the medication.

Plaintiff also objects to Judge Morgan's conclusion that there is no evidence that the outcome would have been different had McCarthy ordered Dilantin from the local pharmacy. Obj. *i.* Plaintiff cites the local pharmacy's record and the MDOC's Medication Authorization Record, which both demonstrate that Parsons received his psychotropic medications soon after McCarthy ordered them from the local pharmacy. The inference is that if Dilantin was included in that order, Parsons would have received it sooner rather than later. Although there is evidence that the medications prescribed from the local pharmacy were administered soon, the evidence is not material to the Eighth Amendment claim against McCarthy. Judge Morgan concluded that Parsons's Dilantin deficit was not attributable to McCarthy through his refusal to duplicate the prescription and order it from the local pharmacy. The Court agrees. Additionally, as stated above, McCarthy worked only as a mental health provider and was prohibited from treating medical issues, such as

6

a seizures disorder. McCarthy cannot be held liable for action he was not permitted to take.

Finally, Plaintiff objects to Judge Morgan's conclusion that Plaintiff offers no evidence connecting McCarthy to Parsons's ingestion of Wellbutrin, a drug contraindicated for persons with seizure disorders, found in Parsons's system after de died. Obj. *j*. Plaintiff claims that a reasonable juror could infer that McCarthy approved the administration of Wellbutrin based on the facts that he was in the same unit at Parsons, Wellbutrin is an antidepressant prescribed by psychiatrists, and in order for nurses to administer Wellbutrin from Standish's stock of medications, it had to be approved by a psychiatrist such as McCarthy. Plaintiff did not respond to McCarthy's motion with respect to Plaintiff's claim that McCarthy violated the Eighth Amendment by prescribing Wellbutrin. Assuming Plaintiff did not waive this argument by failing to raise it before Judge Morgan, *see Williams v. McNeil*, 557 F.3d 1287, 1291-92 (11th Cir. 2009), McCarthy is still entitled to summary judgment on this claim. Plaintiff has offered no evidence to support its claim, and an inference that McCarthy is responsible for the Wellbutrin in Parsons's system is an unreasonable one a jury could not reach on these facts. *See 60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *see also Mathes v. Furniture Brands Int'l, Inc.*, 266 F.3d 884, 888-89 (8th Cir. 2001) (summary judgment is proper when non-moving party fails to "provide sufficient, probative evidence which would permit a fact finder to rule in [its] favor as opposed to engaging in 'mere speculation.' ") (citation omitted).

Accordingly, for the reasons stated above, the Court overrules Plaintiff's objections *f* through *j*. The Court finds the analysis provided in the R & R with respect to McCarthy's motion for summary judgment is sound and adopts it as the Court's own.

III.    Defendants Caruso and Birkett's Motion for Summary Judgment

Caruso is the MDOC Director.  Birkett is the Warden at Standish.  Judge Morgan recommends that the claims against Caruso and Birkett in their individual capacities be dismissed because Plaintiff has not presented any evidence of personal involvement in the alleged unconstitutional conduct, which is required for suits under 42 U.S.C. § 1983.  *See Ashcroft v. Iqbal*, --- U.S. ----, ----; 129 S. Ct. 1937, 1948 (2009).  Plaintiff objects to this conclusion only insofar as it relates to Birkett.  Obj. *I.*  Plaintiff states that there is evidence that Birkett failed to ensure proper staffing of mental health providers at Standish at the time Parsons died.  Even assuming Birkett failed to provide an adequate staff of mental health providers and that this can demonstrate an Eighth Amendment violation, there is no evidence this failure is causally related to Parsons's death.  A jury could find that Parsons died from a seizure, which is a *medical* condition a full-time psychiatrist would not be authorized to treat.  Plaintiff has produced no evidence demonstrating that the failure to have a full-time mental health provider at Standish caused Parsons's fatal seizure.  *See Horn v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994) ("proximate causation is an essential element of a § 1983 claim for damages.").

Judge Morgan also recommends that Court grant Caruso and Birkett summary judgment with respect to Plaintiff's "policy, custom, and practice" (i.e., *Monell*[1]) claims on the basis that these claims are essentially official-capacity suits barred by the Eleventh

---

[1] *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).  *Monell* requires that in order "[t]o establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation [ ] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 471 (6th Cir. 2006) (citations omitted).

Amendment since the MDOC and Standish are arms of the State. *See Turnboe v. Stegall*, 234 F.3d 1270, \*2 (6th Cir. 2000) (Table decision) ("A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity; in this case, the MDOC."). Judge Morgan also concluded that to the extent Plaintiff has sued Caruso and Birkett in their individual or personal capacities, the claims fail because *Monell* claims are applicable to municipalities only, and not individuals.

Plaintiff objects to Judge Morgan's characterization of its claims as *Monell* claims, and argues that the claims against Caruso and Birkett in Count II are supervisory liability claims, cognizable under *City of Canton v. Harris*, 489 U.S. 378 (1989). Obj. *k*. Plaintiff claims it seeks to impose liability on Caruso and Birkett based on their supervisory role over subordinates. Plaintiff's invocation of *City of Canton*, however, is misplaced because that case dealt with municipal liability under section 1983 for a failure to train or supervise subordinates. A *City of Canton* claim *is* a *Monell* claim, pursued under a theory of a failure to train municipal employees. Even assuming, however, that a *Monell* claim may be maintained against an individual for the individual's promulgation of an unconstitutional policy, Plaintiff has failed to provide evidence that Caruso and Birkett were personally involved in the development or adoption of the policies Plaintiff alleges are unconstitutional. Rather, health care policy is developed by medical professionals, which Birkett and Caruso are not. *See* Caruso Aff. ¶ 8, docket no. 113-2; Birkett Aff. ¶ 4, docket no. 113-3.

To the extent Plaintiff asserts supervisory liability claims against Caruso and Birkett apart from their promulgation of policy, these claims also fail because Plaintiff has failed to establish that a jury could find any underlying unconstitutional conduct by Caruso or Birkett's subordinates. *See McQueen*, 433 F.3d at 470 ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor.").

Accordingly, any supervisory liability claims fail and Caruso and Birkett are entitled to summary judgment on these claims as well.

For the reasons above, Plaintiff's objections *k* and *l* are overruled. The Court finds sound the analysis in the R & R with respect to the summary judgment motion of Birkett and Caruso, and adopts the reasoning as its own.

IV.    Summary Judgment Motion of Pausits, Alexander, Bond, and Kocot

Pausits is the nurse who performed Parsons's initial intake when he arrived at Standish and later administered his medications. Alexander is the nurse who received Parsons's mental health request. Bond and Kocot are the prison guards who placed Parsons in his cell after dinner for acting strangely, and later discovered him lying unresponsive. Judge Morgan recommends that the Court grant summary judgment to each of these defendants because Plaintiff has not provided evidence to demonstrate that each violated Parsons's constitutional rights.

First, Plaintiff objects to Judge Morgan's conclusion that there is no evidence that Pausits considered it an emergency situation for Parsons to go without his Dilantin upon arrival. Obj. *m.* Plaintiff states that Parsons was improperly processed outside the 8-hour window required by MDOC policy. Violation of this policy, however, does not demonstrate that Pausits knew of and disregarded a substantial health risk required for a constitutional violation. It is Pausits's unrebutted testimony that she did not consider it an emergency situation that Parsons arrived without his medications. Even if she *should* have known it was an emergency situation, unless she *actually knew* it was such a situation (which she did not), she committed no constitutional violation.

Plaintiff also objects to Judge Morgan's statement that Pausits's authority to order medications is immaterial because there is no evidence a prescription existed upon which

she could have ordered Parsons's medications.  Obj. *n*.  The Court agrees with the R & R on this issue.  Parsons arrived without his medications and a prescription for those medications, so there is nothing Pausits could have done by way of ordering his medications.  Plaintiff's Objection *o* is similar to Objection *n*, objects to the same potion of the R & R, and for the same reasons is likewise overruled.

Plaintiff also objects to Judge Morgan's conclusion that Plaintiff provides no evidence that the lack of Dilantin and the presence of Wellbutrin in Parsons's system is attributable to Pausits.  Obj. *p*.  Plaintiff asserts that whether Pausits ever administered Dilantin remains a question for the jury.  The Court disagrees.  For a jury to find Pausits failed to administer Dilantin to Parsons, it would have to disregard the documentary evidence demonstrating that Pausits administered *Dilantin*, not Wellbutrin, and speculate about the possibility that Pausits administered the wrong medication.  But, even if there was a mix up, there is no evidence that a mix up would have been done with deliberate indifference to the substantial risk of harm to Parsons's health.

Plaintiff objects to Judge Morgan's statement, in reference to Plaintiff's claim against Pausits, that Plaintiff's heavy reliance on the toxicology report does not create a factual issue as to whether Pausits willfully committed a medications error. Obj. *q*.  Plaintiff states that Judge Morgan erred by finding Parsons's receipt of Dilantin was conclusively established simply by Pausits's signature on the medication administration record. Whether Pausits accidentally gave Parsons Wellbutrin instead of Dilantin, however, is a not a *material* fact, insofar as even assuming a jury could so find, there is no evidence that Pausits did so in with deliberate indifferene to Parsons's serious health risk.

Plaintiff also objects to Judge Morgan's conclusion that no jury could find Alexander subjectively perceived facts from which to infer a substantial risk to Parsons, actually drew

the inference, and then disregarded the risk. Obj. *r*. Plaintiff claims Alexander's failure to route Parsons's mental health request to a mental health provider, instead placing the request in the outgoing mailbox where it would not be seen by a health provider for days, demonstrates a deliberate indifference to Parsons's serious health risk. Judge Morgan concluded there was no evidence showing that Alexander knew Parsons's mental health condition posed a substantial risk and then disregarded that risk. The Court agrees. In fact, the evidence demonstrates that Alexander believed Parsons's request was a non-urgent request. There is no evidence to the contrary, except for Parsons's personal letters, which are not relevant to Alexander's state of mind at the time. The mental health request was never discovered in this litigation. The Court, therefore, overrules Plaintiff's Objection *r* and adopts the analysis set forth in the R & R with respect to the claims against Alexander.

Finally, Plaintiff objects to Judge Morgan's conclusion that no jury could find that Defendants Kocot and Bond were deliberately indifferent to Parsons's serious medical needs because they did not perceive and then disregard a serious health risk. Obj. *s*. Plaintiff cites a MDOC log book from Parsons's unit where Kocot indicates that Parsons was "acting strange since his arrival to the unit." Plaintiff contends that this shows Kocot was aware of a serious medical risk and disregarded that risk by not referring him immediately to a mental health provider upon first noticing the strange behavior. Plaintiff claims Bond was also aware of Parsons's strange behavior and disregarded it by failing to place Parsons in an observation cell to be monitored until a mental health professional could be contacted. As stated in the R &R, however, there is no evidence that Parsons's "strange" behavior demonstrated to Kocot and Bond that Parsons was at risk of having a serious medical emergency, which the officers then consciously disregarded. "Acting

strangely" is not the same as exhibiting a serious health risk. The Court agrees with the analysis set forth in the R & R with respect to the claims against Kocot and Bond, and overrules Plaintiff's objection *s*.

Accordingly, for the reasons stated above, the Court overrules Plaintiff's objections *m* through *s*. The Court finds the analysis provided in the R & R with respect the summary judgment motion of Pausits, Alexander, Kocot, and Bond is sound, and adopts it as the Court's own.

### CONCLUSION

The Court has conducted a *de novo* review of those portions of the R & R to which Plaintiff filed objections. Each of Plaintiff's objections to the R & R have been addressed and are overruled. The Court adopts the analysis in the R & R as supplemented herein.

**WHEREFORE**, it is hereby **ORDERED** that:

- The Report and Recommendation (docket no. 136) is **ADOPTED** as the Opinion of the Court, as supplemented by the above analysis;

- Defendant McCarthy's motion for summary judgment (docket no. 102) is **GRANTED**;

- Defendants Caruso and Birkett's motion for summary judgment (docket no. 113) is **GRANTED**;

- Defendants Pausits, Alexander, Kocot and Bond's motion for summary judgment (docket no. 120) is **GRANTED**.

- Plaintiff's claims against Defendants McCarthy, Caruso, Birkett, Pausits, Alexander, Kocot, and Bond are **DISMISSED with prejudice**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2010, by electronic and/or ordinary mail.

<u>Alissa Greer</u>
Case Manager